738 So.2d 783 (1998)
Ex Parte The WATER WORKS AND SEWER BOARD OF THE CITY OF BIRMINGHAM.
Re Larry Wallace et al.
v.
The Water Works and Sewer Board of the City of Birmingham et al.
Ex Parte The Water Works and Sewer Board of the City of Birmingham et al.
Re John C. Rockett, Jr., et al.
v.
The Water Works And Sewer Board of the City of Birmingham et al.
1970099 and 1970474.
Supreme Court of Alabama.
December 4, 1998.
Rehearing Applications Denied June 11, 1999.
*785 Charlie D. Waldrep, K. Mark Parnell, and Mary H. Thompson of Gorham & Waldrep, P.C., Birmingham; and Billy L. Church and Alan Lasseter of Church & Seay, P.C., Pell City, for petitioner Water Works and Sewer Board of the City of Birmingham.
A. Dwight Blair of Blair, Holladay & Parsons, Pell City; Gayle Gear of Dawson & Gear, Birmingham; and M. Clay Ragsdale and E. Ansel Strickland of Law Offices of M. Clay Ragsdale, Birmingham, for respondent Larry Wallace.
H. Jadd Fawwal of Fawwal & Fawwal, P.C., Bessemer; and Jon B. Terry and Leslie S. White of Bains & Terry, Bessemer, for respondent John C. Rockett, Jr.
SEE, Justice.
These petitions for the writ of mandamus involve the certification of two class actions filed in separate circuit courts against a utility company, its directors, and others, alleging the misuse of public funds. The Water Works and Sewer Board of the City of Birmingham petitions this Court for writs of mandamus ordering the St. Clair Circuit Court and the Jefferson Circuit Court, Bessemer Division, to decertify the respective classes, to hold that certain counterclaims are compulsory, and to abate a portion of the second-filed action. Because the trial courts failed to perform a rigorous analysis of the prerequisites of Rule 23, Ala. R. Civ. P., and erred in it analysis of whether certain counterclaims could be brought, and because a significant portion of the second-filed class action should have been dismissed pursuant to § 6-5-440, Ala.Code 1975, the "abatement statute," we grant the petitions.

I.

A. The Wallace Action
On November 12, 1996, Larry Wallace filed a complaint containing class allegations *786 (the "Wallace Action") in the Circuit Court of St. Clair County, against the Water Works and Sewer Board of the City of Birmingham, and the Board's directors (collectively, the "Birmingham Water Works Board"). The complaint was filed on behalf of the customers of the Birmingham Water Works Board. The complaint alleged that certain disbursements of public funds held by the Birmingham Water Works Board were not expressly authorized by law and that these disbursements had wrongfully inflated customers' water bills. Specifically, the complaint alleged conversion, fraudulent suppression, and breach of fiduciary duty. The complaint sought monetary relief in the form of restitution, compensatory damages, and punitive damages, and it sought equitable relief in the form of an accounting and an injunction to eliminate similar illegal expenditures in the future.
On April 18, 1997, the St. Clair Circuit Court held the first of two hearings concerning the certification of the class. On July 11, at the second hearing, the Birmingham Water Works Board argued that this action was not appropriate for class certification because, it asserted, it would have compulsory counterclaims against thousands of the class members for nonpayment of their water and sewer bills. On September 15, the trial court entered a three-page order certifying the class as a Rule 23(b)(3), Ala. R. Civ. P., class that includes "all rate payers of the Water Works Board of the City of Birmingham for the period beginning January 1, 1993 up through and inclusive of the date of this order." The trial court further stated in its order that the Birmingham Water Works Board could not file counterclaims against the class members alleging nonpayment of the water and sewer bills because, it held, the counterclaims were permissive counterclaims, and because the counterclaims would engender confusion and disruption in the administration of the class action.

B. The Rockett Action
On May 9, 1997, John Rockett and other individuals filed a complaint containing class allegations (the "Rockett Action"), in the Bessemer Division of the Circuit Court of Jefferson County against the Water Works Board of the City of Bessemer (the "Bessemer Water Works Board"); the Birmingham Water Works Board; and various individuals who either are members of the respective boards or manage them. The complaint was filed on behalf of customers of the Bessemer Water Works Board and on behalf of customers of the Birmingham Water Works Board who lived in Bessemer. The complaint states that the Bessemer Water Works Board purchases all of its water from the Birmingham Water Works Board for distribution to the Bessemer Water Works Board's customers in Bessemer. Thus, the customers of the Bessemer Water Works Board are also indirect customers of the Birmingham Water Works Board. However, according to the complaint, some Bessemer residents are served directly by the Birmingham Water Works Board and, therefore, are direct customers of the Birmingham Water Works Board.
The complaint alleges, as does the complaint in the Wallace action, that the Birmingham Water Works Board improperly used public funds for illegal purposes. It also alleges various distinct wrongs by the Bessemer Water Works Board, including the making of exorbitant and illegal expenditures that harmed the class members, directly or indirectly, by inflating the amounts charged, and paid by them, on their water bills. The complaint seeks monetary relief in the form of actual damages and punitive damages and seeks equitable relief in the form of an accounting and an injunction to eliminate similar illegal expenditures in the future.
On May 15, 1997, the Jefferson Circuit Court issued a two-page order conditionally certifying the Rockett Action to include as plaintiffs "all resident citizens of the Bessemer Division of Jefferson County *787 who purchase water from the Defendant." On June 10, the Birmingham Water Works Board filed counterclaims against certain class members, alleging that they had not paid their water bills. On June 20, the Birmingham Water Works Board filed a motion to dismiss. The Birmingham Water Works Board argued that § 6-5-440, Ala.Code 1975, the abatement statute, prohibited simultaneous actions based on the same cause of action against the same party. On July 16, the Rockett Action plaintiffs filed a motion to strike the Birmingham Water Works Board's counterclaims. On July 17, the trial court denied the Birmingham Water Works Board's motion to dismiss and denied in part the motion to strike the counterclaims, stating that only "active participating plaintiff[s]" could be subjected to a counterclaim.
The Birmingham Water Works Board and the other defendants filed these petitions, asking this Court to vacate the certification orders for both actions and to reverse the orders of the trial courts that deny the Birmingham Water Works Board the right to assert counterclaims against all delinquent class members. The defendants also ask this Court to order the Jefferson Circuit Court to abate that portion of the Rockett Action dealing with the alleged wrongful acts of the Birmingham Water Works Board that are the subject of the Wallace Action previously filed in the St. Clair Circuit Court.

II.
A writ of mandamus "is a drastic and extraordinary writ," and will be issued "only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). A writ of mandamus may not be issued to control or review the exercise of discretion, except where an abuse of discretion is shown. Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala.1989) (citing Ex parte Edgar, 543 So.2d 682 (Ala.1989)).

A. Class Certification Orders
In Ex parte Green Tree Financial Corp., 684 So.2d 1302, 1307 (Ala.1996), this Court stated:
"[T]he one against whom certification has been entered has a clear legal right to a writ [of mandamus] directing that the class action certification be set aside if the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23in the event of such a failure, the trial court's certification of the action as a class action constitutes an abuse of discretion."
(Emphasis added; citations omitted.) The plaintiff's sufficient evidence must appear in the trial court's rigorous analysis of the Rule 23 criteria before class certification is proper. See Ex parte Citicorp Acceptance Co., 715 So.2d 199, 204 (Ala.1997); see generally Green Tree, 684 So.2d at 1308. Rule 23(a) contains four criteria that must be supported by evidence and that must be rigorously analyzed before a class can be certified: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In Green Tree, 684 So.2d at 1307, this Court held that an order that "merely parrots the formulaic language of Rule 23(a)" is insufficient to support class certification. Accord Citicorp, 715 So.2d at 203 ("[C]lass actions may not be approved lightly and ... the determination of whether the prerequisites of Rule 23 have been satisfied requires a `rigorous analysis.'"); Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200 (6th Cir. 1974) ("There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.").

1. The Wallace Action
The Birmingham Water Works Board contends that the named plaintiff in the Wallace Action failed to present sufficient *788 evidence to support a finding of the class-certification criteria provided in Rule 23, Ala. R. Civ. P. Thus, the Birmingham Water Works Board asserts, class certification is improper because the trial court's order does not contain a sufficiently rigorous analysis of the Rule 23 criteria with respect to the specific facts of that case. We agree.
In support of his motion for class certification, Wallace offered his own half-page affidavit, certain pages of his deposition, and representations of his counsel. Although the St. Clair Circuit Court held hearings, it did not allow the Birmingham Water Works Board to present a significant portion of its factual evidence. The insufficiency of the evidence is fatal to the requisite analysis of the Rule 23 criteria that a trial court must conduct before certifying a class action. See Citicorp, 715 So.2d at 204 (requiring that a trial court conduct a rigorous analysis of the certification criteria). In this case, the insufficiency of the evidence is reflected in the conclusory analysis of the Rule 23(a) typicality and adequacy criteria contained in the trial court's certification order. The order merely recites the requirement of these criteria and summarily concludes that both of these prerequisites are met.[1] Thus, the St. Clair Circuit Court abused its discretion in certifying the class in the Wallace Action. See Ex parte American Bankers Life Assurance Co., 715 So.2d 186 (Ala.1997) (holding that the trial court improperly certified a class because it had not conducted a rigorous analysis of the elements of commonality and typicality).

2. The Rockett Action
The Birmingham Water Works Board and the other defendants contend that the Jefferson Circuit Court's conditional certification of the class in the Rockett Action was also improper. The trial court conditionally certified the class without holding any hearings and without giving the Birmingham Water Works Board and the other defendants an adequate opportunity to contest the conditional certification. In Citicorp, 715 So.2d at 203, this Court stated:
"While conditional certification of a class action is allowed, simply labeling a class certification as `conditional' does not relieve the trial court of its obligation to conduct a rigorous analysis and to require the plaintiff to carry its burden of proof as to the appropriateness of class treatment under Rule 23(a)."
Accord Ex parte American Bankers Life Assurance Co., 715 So.2d 186, 191 (Ala. 1997) ("Any further conditional order of the trial court must identify each of the four elements of Rule 23(a)."). The trial court's order reflects few facts and contains no analysis of the application of the Rule 23 criteria to the facts of the case. Thus, the Jefferson Circuit Court abused its discretion in conditionally certifying the class in the Rockett Action.

B. Compulsory Counterclaims and Class Actions
As part of the certification process, the Birmingham Water Works Board asserted counterclaims based on unpaid water bills. The St. Clair Circuit Court held, without analysis, that the counterclaims were not compulsory under Rule 13(a), Ala. R. Civ. P., and could not be asserted in the class action. The Jefferson Circuit Court apparently held that the counterclaims were compulsory, but could be asserted only against plaintiffs actively participating in *789 the action, that is, only against class representatives.

1. Compulsory Counterclaims
In these mandamus petitions, the Birmingham Water Works Board argues that the counterclaims are compulsory under Rule 13(a) because, it says, the counterclaims are logically related to the claims of the plaintiff classes in the Wallace Action and the Rockett Action. Specifically, the Birmingham Water Works Board asserts that a large number of the plaintiff class members are delinquent in the payment of their water bills, the very same bills that the plaintiffs assert were too high because of the alleged illegal conduct of the Birmingham Water Works Board and the other defendants. Thus, the Birmingham Water Works Board contends that if it does not assert its compulsory counterclaims now, it will be barred from doing so in the future. The plaintiffs in the Wallace Action and the Rockett Action argue that the counterclaims are not compulsory. The plaintiffs in the Rockett Action further assert that the delinquent-account counterclaims are not logically related to the claims in that class action because, they say, only plaintiffs that are current on their water bills are included in that class. The plaintiffs in the Wallace Action assert that the delinquent-account counterclaims bear no logical relationship to the allegations of wrongdoing by the Birmingham Water Works Board. We disagree with the plaintiffs' arguments.
Rule 13(a), Ala. R. Civ. P., provides in pertinent part:
"Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
(Emphasis added.) The Committee Comments to Rule 13(a) state: "A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim." (Emphasis added.) In Brooks v. Peoples National Bank, 414 So.2d 917, 919 (Ala.1982), this Court explained:
"The logical relationship test denominates a counterclaim as compulsory if (1) its trial in the original action would avoid substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts. The claims arise from the same core of operative facts if (1) the facts taken as a whole serve as the basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant."
(Emphasis added.) This Court has further stated that "`[t]he rule on compulsory counterclaims should receive a "broad realistic interpretation in light of the interest of avoiding a multiplicity of suits."'" Mississippi Valley Title Ins. Co. v. Hardy, 541 So.2d 1057, 1060 (Ala.1989) (quoting Plant v. Blazer Fin. Services, Inc. of Georgia, 598 F.2d 1357, 1361 (5th Cir.1979)) (quoting 3 Moore's Federal Practice ¶ 13.13 at p. 300).
InBrooks, 414 So.2d at 919, this Court held that a claim alleging fraud in the inducement regarding a promissory note, and a counterclaim alleging default on the payment of that note, were logically related. This Court stated:
"This Court, in a similar case, held that in an action on a note, a counterclaim seeking damages for breach of an indemnification agreement executed contemporaneously with the note was a compulsory counterclaim. Redmond v. Harrelson, 355 So.2d 356 (Ala.1978). Furthermore, the majority position in federal courts is that a creditor's claim for default on a debt is a compulsory counterclaim in an action under the *790 Truth-in-Lending laws. See Plant v. Blazer Financial Services, Inc. of Georgia, 598 F.2d 1357 (5th Cir.1979); Carter v. Public Finance Corp., 73 F.R.D. 488 (N.D.Ala.1977)."
Brooks, 414 So.2d at 919. This Court stated that the action arose out of a "single, continuous loan transaction" and that the evidence needed to prove the claim and the counterclaim "overlapped." Id. The facts, taken as a whole, served as the basis for both claims. Id.
In determining whether the claims and the counterclaims in the actions underlying these petitions are logically related, we first dispose of the assertion by the plaintiffs in the Rockett Action (the Jefferson Class Action) that the class contains only customers who are current on their water bills. This assertion is clearly without merit. The complaint states that the class includes "current customers of the ... Water Works Board of the City of Bessemer" and "current direct customers of [the] Birmingham Water Works [Board]...." The complaint does not purport to limit the class to those plaintiffs who are customers and who are current on their water bills. Plainly read, the complaint in the Rockett Action includes all current customers of the boards regardless of whether their accounts are current.
The more pertinent issue is whether the delinquent-account counterclaims are "logically related" to the class-overcharge claims. On the one hand, the alleged wrongdoings of the Birmingham Water Works Board, including illegal expenditures of board funds and excessive expenditures, must be proven by specific facts that differ from the specific facts surrounding the delinquency of certain plaintiffs on their water bills. On the other hand, the claims of the plaintiffs, asserting that their water bills were too high, arise from the same contractual water-service relationship between the customers and the Birmingham Water Works Board as the counterclaims asserting that payments on those water bills are delinquent. The critical issue is whether the logical-relationship test of Rule 13(a) is satisfied by the fact that the claim and the counterclaim arise from the same contract, or whether additional factual similarities are required. For example, to denominate the counterclaims "compulsory," must the reason for the alleged overcharges on the water bills by the Birmingham Water Works Board (the claims) arise from the same facts as the reason for the alleged lack of payment on those same water bills by certain of the plaintiffs (the counterclaims)? We resolve this issue by referring to the federal cases dealing with counterclaims alleging delinquent payments on notes challenged under the truth-in-lending laws.
In Plant, 598 F.2d 1357, which this Court cited with approval in Brooks, 414 So.2d at 919, the United States Court of Appeals for the Fifth Circuit squarely addressed the issue whether the logical-relationship test for Rule 13(a), Fed.R.Civ.P.,[2] was satisfied by the fact that a truth-in-lending claim arose from the same note as a counterclaim alleging failure to pay on the note. The claim was based on the defendant creditor's failure to disclose terms regarding an after-acquired security interest. Plant, 598 F.2d at 1359. The counterclaim was based on the plaintiff debtor's failure to make any payments on the note. Id. The Fifth Circuit noted several arguments against treating the counterclaims as compulsory, including the argument that the adjudication of the failure-to-disclose claim would be frustrated by *791 the "myriad factual and legal questions essential to a decision on the debt claims but unrelated to the truth-in-lending violation." Id. at 1361 (emphasis added). Nonetheless, the Fifth Circuit rejected this argument.
The Fifth Circuit noted that resolution of the delinquent payment counterclaim itself would impose little burden in fact because the only additional finding to be made is simply "how much the plaintiff has paid." Plant, 598 F.2d at 1364. Further, the Fifth Circuit explained that if the creditor was not allowed to assert his delinquent-payment counterclaim against the defaulting debtor, the creditor
"could be forced to satisfy the debtor's truth-in-lending claim without any assurance that his claims against the defaulting debtor arising from the same transaction will be taken into account or even that the funds he has been required to pay will still be available should he obtain a state court judgment in excess of the judgment on the truth-in-lending claim."
Plant, 598 F.2d at 1364. Thus, the Fifth Circuit concluded that where a delinquent-payment counterclaim and a failure-to-disclose claim arose from the same note, they were logically related, notwithstanding that the reasons for the delinquent payment had nothing to do with the reasons for the failure to disclose. Id.; accord Moore v. New York Cotton Exch., 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) (stating that "`[t]ransaction' is a word of flexible meaning" and thus "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."); Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated § 13.4, pp. 283-84 (3d ed.1996).
As in Brooks, 414 So.2d at 919, we find the Fifth Circuit's rationale in Plant persuasive on our interpretation of Alabama's Rule 13(a). We conclude that the plaintiffs' overcharge claims in the Wallace Action and in the Rockett Action are logically related to the counterclaims, notwithstanding that the reasons for the alleged delinquent payment had nothing to do with the reasons for the alleged overcharges. Thus, the counterclaims are "compulsory" under Rule 13(a).

2. Rule 13(a) and Rule 23
The plaintiffs in the Wallace Action also contend that even if the counterclaims of the Birmingham Water Works Board are compulsory, the counterclaims should not be allowed because, they argue, counterclaims are inherently inappropriate for class actions. Specifically, the plaintiffs argue that Rule 23, governing class actions, operates to displace Rule 13(a), which governs compulsory counterclaims. The Birmingham Water Works Board responds by arguing that, despite the plaintiffs' assertion, numerous courts have allowed compulsory counterclaims in class actions. Thus, the Birmingham Water Works Board contends that Rule 23 does not displace the operation of Rule 13(a); we agree.
First, the plaintiffs assert that Rule 13(a) and Rule 23 are incompatible, based on the language of Rule 13 and based on the policies supporting that rule. The plaintiffs assert that Rule 13(a), which allows the assertion of counterclaims against an "opposing party," does not apply to absent members of the plaintiff class because, the plaintiffs say, such members are not sufficiently in "opposition" to the defendant for the purposes of Rule 13. See, e.g., Buford v. H & R Block, Inc., 168 F.R.D. 340, 363 (S.D.Ga.1996); 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 4.34 (3d ed.1992).[3] Our examination *792 of the text of Rule 13 and of Rule 23, however, reveals no irreconcilable conflict between these provisions.
Rule 13(a) contains no limitation relating to the number of parties against whom a counterclaim must be asserted, but plainly provides that a compulsory counterclaim "shall" be asserted "against any opposing party." (Emphasis added.) The plain meaning of the word "any" indicates that the counterclaims must be asserted against a single individual plaintiff, against multiple plaintiffs, or against an entire class of plaintiffs. See Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n, 589 So.2d 687, 689 (Ala.1991) (stating that where plain language is used, a court is bound to interpret the language to mean exactly what it says); I The Oxford English Dictionary 539 (2d ed.1989) (defining "any" by stating, "[i]n affirmative sentences it asserts concerning a being or thing of the sort named, without limitation as to which, and thus constructively of every one of them, since every one may in turn be taken as a representative ....") (emphasis original). In fact, the Committee Comments to Rule 13 make it clear that a counterclaim "need not run for all the parties on one side and against all the parties on the other" and that "[a]dditional parties may be brought in to defend against the counterclaim where their presence is necessary for the granting of complete relief." See Rule 13(h). Thus, the plain language of Rule 13(a) requires that a defendant "shall state" its compulsory counterclaims against one plaintiff, against multiple plaintiffs, or against a class of plaintiffs.
Further, absent class plaintiffs are "opposed to" and "adverse to" the interests of the defendant. Absent class members have opposing and adverse interests against the defendant on the class claims because such claims generally seek damages and other relief from the defendant payable to the individual absent class members. See generally Rule 23(a)(2), Ala. R. Civ. P. (requiring class members to share common questions of law or fact in their claims against the defendant); 1 Champ Lyons, Jr., § 13.3 at 281-82 ("The most obvious determination as to who is an `opposing party' relates to status as an adversary. This question has been answered by inquiry as to whether the person asserting the counterclaim against a party has first been made the object of a claim by that party.") (citing Kearney v. A'Hearn, 210 F.Supp. 10 (S.D.N.Y.1961), aff'd, 309 F.2d 487 (2d Cir.1962)). Absent class members have opposing and adverse interests against the defendant on the counterclaim because the counterclaim generally seeks damages or other relief payable by the absent, class members to the defendant. See, e.g., Wolfson v. Artisans Sav. Bank, 83 F.R.D. 552, 554-55 (D.Del.1979) (rejecting the argument that absent class members were not "opposing parties" for purposes of Rule 13(a)); National Super Spuds, Inc. v. New York Mercantile Exch., 77 F.R.D. 361, 373(S.D.N.Y.1977) (stating that absent class members were "opposing parties" for purposes of Rule 13). Indeed, Rule 13 recognizes that if a defendant fails to assert his compulsory counterclaim, then the counterclaim may be barred because the doctrines of res judicata and collateral estoppel may bar the relitigation of claims and issues finally determined in the class action. See Rule 13(a) (stating that if a compulsory counterclaim is not asserted, relitigation of the claim may be barred by *793 the doctrines of res judicata or collateral estoppel); Rule 13 cmt. (noting that, under the doctrine of collateral estoppel, facts necessary for the adjudication of an affirmative claim may not be relitigated) (citing Crowder v. Red Mountain Mining Co., 127 Ala. 254, 29 So. 847 (1900)). Thus, we perceive nothing in the express language of Rule 13 or Rule 23 that creates a conflict between those rules and bars the assertion of counterclaims in class actions, and we are hesitant to create a conflict that does not appear in the text of the rules. See generally Walker County v. White, 248 Ala. 53, 55, 26 So.2d 253, 255 (1946) (recognizing that statutes should be construed to avoid conflict and to form a harmonious whole).
Second, the plaintiffs assert that requiring the assertion of compulsory counterclaims in a class action would not serve the policies underlying the two rules. Rule 13 promotes the policies of allowing the defendant to litigate all related claims in a single action, affording the defensive tactic of asserting counterclaims against the plaintiffs, and promoting economy. Newberg & Conte, § 4.34, at pp. 4-147 to -148 (citing Montecatini Edison, S.P.A. v. Ziegler, 486 F.2d 1279, 1282 (D.C.Cir.1973), and Frederick County Fruit Growers Ass'n v. McLaughlin, 703 F.Supp. 1021 (D.D.C.1989), aff'd, 968 F.2d 1265 (D.C.Cir. 1992)). Rule 23 promotes the policies of allowing plaintiffs access to judicial relief, affording the offensive tactic of asserting large dollar claims against the defendant, and promoting economy. Newberg & Conte, § 4.34, at pp. 4-153 to -154 (citing Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 338-39, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), American. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)).
With respect to Rule 13's policy of allowing the defendant to litigate all related claims in a single action, it has been argued that such comprehensive litigation is difficult to obtain in a class action because the trial court may not have personal jurisdiction over absent class members and may not be a proper venue for their claims. Newberg & Conte, § 4.34, at pp. 4-149 to -150 (indicating that while a court need not have personal jurisdiction over an absent class member as a plaintiff, it must have personal jurisdiction over the absent class member as a counterclaim defendant; and stating that the court may not have venue over claims against an absent class member). With respect to personal jurisdiction, Alabama courts, unlike their federal Article III counterparts, have broad general jurisdiction. See generally Brooks v. Hobbie, 631 So.2d 883, 889 (Ala.1993). For those more common class actions that include only Alabama residents in the plaintiff class, Alabama courts will have personal jurisdiction over absent class members. See Rule 4.1(a), Ala. R. Civ. P. For those class actions that include nonresidents in the class, the trial court should determine whether it has personal jurisdiction over the absent plaintiffs, and, if not, it may simply dismiss those counterclaims over which the court lacks jurisdiction. See, e.g., T.J. Stevenson & Co. v. 81,193 Bags of Wheat Flour, 399 F.Supp. 936 (S.D.Ala.1975) (dismissing a counterclaim against a party over whom the court did not have personal jurisdiction).[4] Further, with respect to venue, Alabama Rule 82(c), unlike its federal counterpart, expressly provides that a counterclaim joined pursuant to Rule 13 is ancillary to the original claim and need not have an independent basis of venue.[5] Thus, whatever *794 weight these objections may have with respect to a class action administered by a federal court, they have less weight with respect to class actions administered by Alabama courts.
Moreover, we are unwilling to adopt a position under which Rule 23's policy of allowing access to judicial relief to absent class members automatically outweighs Rule 13's policy of allowing a defendant to litigate all related claims in a single action. In Heaven v. Trust Company Bank, 118 F.3d 735, 738 (11th Cir.1997), the United States Court of Appeals for the Eleventh Circuit affirmed a trial court's refusal to exclude all counterclaims in order to certify a class that would have provided access to plaintiffs suing under consumer-lending laws. The Eleventh Circuit stated:
"[T]he exclusion of counterclaim defendants [e.g., absent class members,] would advance [the class plaintiffs'] interest in pursuing a class action (and the policies embodied in Rule 23) only by completely frustrating [the defendant's] equally valid interest in litigating all the claims arising from one transaction together in a single forum (the policy embodied in Rule 13(a))."
Id. Thus, the practical difficulties associated with the assertion of counterclaims in a class context and Rule 23's policy of affording access to judicial relief do not per se outweigh the defendant's interest under Rule 13(a) in litigating all the claims against him in a single action.
With respect to Rule 13's policy of allowing defendants to use counterclaims as a defensive tactic, it has been argued that that tactic is designed solely to allow counterattacks against parties who, unlike absent class members, commenced and control the litigation. Newberg & Conte, § 4.34, at p. 4-152 to -153. At bottom, this argument rests on the previously discounted contention that absent class members are not opposing parties. Id. Because absent class members are opposing parties with interests adverse to those of the defendant, see National Super Spuds, 77 F.R.D. at 373, Rule 13 requires the defendant to assert counterclaims against absent class members.
Moreover, we are unwilling to adopt a position under which Rule 23's policy of affording the offensive tactic of bringing large dollar claims would automatically outweigh Rule 13's policy allowing a defendant to use the defensive tactic of bringing counterclaims against plaintiffs. See Heaven, 118 F.3d at 738 (stating that the policies underlying Rule 23 do not displace the policies underlying Rule 13). Thus, the rules, when applied together, strike a balance between the offensive tactic of the plaintiff class members and the defensive tactic of the defendant.
With respect to Rule 13's policy of promoting economy by requiring the presentation of compulsory counterclaims in class actions, it has been argued that the economies provided by Rule 13 are difficult to obtain in a class action because the absent class members may retain separate counsel and because the absent class members may opt out of the class. Newberg & Conte, § 4.34, at p. 4-152. Although a defendant in a class action may have to face additional counsel of the absent class members, he would have to face these additional counsel if the counterclaims were brought in separate individual trials held at different times and possibly before different judges. See Alarm Device Mfg. Co. v. Alarm Products Int'l, Inc., 60 F.R.D. 199, 202 (E.D.N.Y.1973) (noting that certain counterclaims may be tried separately and involve representation by different counsel). Thus, it may be more efficient for a defendant to bring counterclaims in a class action than to bring them *795 in separate actions. With respect to the economies to the absent class members and to the court, it has been argued that Rule 13 may force certain class members to opt out, thus decreasing the economies provided under Rule 23. While there is a possibility that absent members may opt out of the class, there is also a possibility that the plaintiff in an individual action may drop his claim if the defendant agrees to drop the counterclaim. See, e.g., Wassail v. DeCaro, 91 F.3d 443, 445 (3d Cir. 1996) (stating that the plaintiff agreed to drop claims where the defendant agreed to drop counterclaim); Tymshare, Inc. v. Covell, 727 F.2d 1145, 1149 (D.C.Cir.1984) (noting that the plaintiffs agreed to dismiss claims where the defendants agreed to dismiss counterclaims).
The economies argument ultimately devolves into an argument about the manageability of the counterclaims in the context of the class action, a concern addressed both by Rule 13 and by Rule 23. Rule 13(i), through its reference to Rule 42(b), Ala. R. Civ. P., provides that, to further convenience and to avoid prejudice, a court may order separate trials of the counterclaims. See FDIC v. Selaiden Builders, Inc., 973 F.2d 1249, 1253 (5th Cir.1992) (holding that the trial court did not abuse its discretion by ordering a separate trial for the counterclaims, where the convenience of the parties would be served), cert. denied, 507 U.S. 1051, 113 S.Ct. 1944, 123 L.Ed.2d 650 (1993). Thus, if a relatively small number of the counterclaims would pose administrative problems in the classaction context, separate trials of those counterclaims may be an efficient alternative.
If the number of counterclaims is large, then Rule 23(b)(3) and (c)(4) allow the trial court to divide the class into subclasses for efficient adjudication, for example, of the varying defenses that could be asserted against the counterclaims.[6] If division into subclasses is, by itself, insufficient to make the class manageable, the trial court may narrow the plaintiff class itself to exclude class members against whom unmanageable counterclaims are asserted. In Roper v. Consurve, Inc., 578 F.2d 1106, 1116 (5th Cir.1978), aff'd, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), the United States Court of Appeals for the Fifth Circuit expressly stated that in dealing with counterclaims in a class action, a trial court may issue an order "separating and severing the class into two different classes, one with counter-claims and one without counterclaims." The Fifth Circuit also recognized that a trial court could issue an order "excluding counter-claim defendants from the plaintiff class." Id.
Further, if, despite the availability of the safeguards mentioned above, compulsory counterclaims make the class unmanageable, then the trial court should not *796 certify the class. In Marshall Durbin & Co. of Jasper, Inc. v. Jasper Utilities Board, 437 So.2d 1014, 1025 (Ala.1983), this Court held that a trial court did not abuse its discretion in finding that class certification would be inappropriate because approximately 28% of the members of the proposed class would be subject to compulsory counterclaims. Accord Heaven, 118 F.3d at 738 (affirming the trial court's refusal to certify a class based in part on the presence of counterclaims); Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir.1996) (reasoning that predominance and superiority are outweighed when issues are replete with individual circumstances). In this regard, the difficulties arising from compulsory counterclaims are no different from the common difficulties arising from individual defenses to the class claims that may result in a denial of class certification. See, e.g., Pipes v. American Security Ins. Co., 169 F.R.D. 382, 384 n. 2 (N.D.Ala.1996) (noting that certain fraud claims may be unsuitable for class certification because of the necessity of proving individual reliance on alleged misrepresentations) (citing Andrews v. AT & T Co., 95 F.3d 1014, 1024-25 (11th Cir.1996)).
We conclude that neither the language of the rules nor the policies underlying the rules require that Rule 13 be displaced per se by Rule 23. Both rules promote evenhandedness, both promote economies in the litigation process, and both provide mechanisms for managing practical difficulties of administration. Accordingly, we decline to judicially create a class-action exception to Rule 13(a) that does not appear in its text. A trial court should assess each of the provisions of Rule 13 and Rule 23 in determining whether class certification is appropriate in each case. Further, if a trial court determines that class certification is appropriate, it should set forth in its respective certification orders its rigorous analysis of the applicable provisions of Rule 13 and Rule 23(a), (b), and (c) as those provisions relate to the specific facts in the case. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997) ("Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's `close look' at the predominance and superiority criteria....").

C. Abatement
Finally, the Birmingham Water Works Board contends that the Jefferson Circuit Court abused its discretion in failing to grant its motion to abate that portion of the Rockett Action that directly parallels the Wallace Action previously filed in the St. Clair Circuit Court. The Birmingham Water Works Board argues that to the extent the Wallace Action and the Rockett Action are premised on virtually identical complaints and to the extent certain of the named class members in the Rockett Action represent the direct customers of that board, the portion of the Rockett Action not dealing explicitly with the Bessemer Water Works Board should abate. We agree.
Section 6-5-440, provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
In Ex parte First National Bank of Jasper, 717 So.2d 342, 350 (Ala.1997), this Court indicated that a trial court should dismiss an action containing class allegations if "there is pending in another court a prior-filed action involving substantially identical class allegations." First Tennessee Bank, N.A. v. Snell, 718 So.2d 20 (Ala. 1998), this Court stated that "a prior-filed class action prevails over a later-filed class action involving substantially identical class allegations and requires the abatement of the later-filed action." In First Tennessee, id. at 21, this Court stated that *797 it would take a reasonable approach in applying the first-to-file rule to class actions filed before the release of First National Bank of Jasper, 717 So.2d 342, and other related decisions on December 16, 1997. In First Tennessee, 718 So.2d at 21, the second-filed class action had proceeded to settlement and the defendant had not made an abatement motion. Accordingly, this Court did not require abatement of the second-filed action. Id.
In the situation now before us, the second-filed action, the Rockett Action, was filed on May 9, 1997, and it asserted allegations substantially identical to those made in the first filed action, the Wallace Action. On June 20, the Birmingham Water Works Board moved for a dismissal of the Rockett Action pursuant to § 6-5-440. Unlike the second-filed class action in First Tennessee, the second-filed action in this case has merely been conditionally certified, the defendants have moved for abatement, and the parties have not reached a settlement. Thus, the Jefferson Circuit Court should have granted the Birmingham Water Works Board's motion and dismissed that portion of the Rockett Action that deals solely with the Birmingham Water Works Board, that is, those claims by direct customers of the Birmingham Water Works Board.[7]

III. Summary
The Birmingham Water Works Board has shown a clear legal right to the relief requested. Therefore, the petitions for the writ of mandamus are granted. The trial courts are directed to vacate their respective orders certifying the Wallace Action and the Rockett Action. Further, the trial courts are directed to vacate their orders holding that the counterclaims asserted by the Birmingham Water Works Board are not compulsory. The trial courts should conduct a rigorous analysis, applying Rule 23 and, where appropriate, Rule 13 to the facts of the respective class actions before ordering the classes certified or not certified. Additionally, the Jefferson Circuit Court is instructed to enter an order abating that portion of the Rockett Action dealing with direct customers of the Birmingham Water Works Board.
WRITS GRANTED.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
LYONS, J., concurs in Parts IIA and IIB, and concurs in the result in Part IIC.
SHORES and COOK, JJ., concur in Part IIA, concur in the result in Part IIB, and concur in the result and dissent from the rationale in Part IIC.
ALMON, J., concurs in Part IIA, dissents from Part IIB, and concurs in the result in Part IIC.
KENNEDY, J., concurs in Part IIA, dissents from Part IIB, and concurs in the result and dissents from the rationale in Part IIC.
COOK, Justice (concurring as to Part IIA; concurring in the result as to Part IIB; and concurring in the result and dissenting from the rationale as to Part IIC).
I concur in the decertification of the classes and the partial abatement of the later-filed class. I dissent from the rationale, however, insofar as it rests on Ala. Code 1975, § 6-5-440, the "abatement statute." This Court's recent opinions in Ex parte First National Bank of Jasper, 717 So.2d 342 (Ala.1997) ("FNB of Jasper III"), and Ex parte State Mutual Insurance Co., 715 So.2d 207 (Ala.1997), taken together, addressed in considerable detail *798 the reasons § 6-5-440 has no application to class actions. Continued reference to § 6-5-440 in connection with class actions engenders confusion and uncertainty. Even worse, it raises the prospect of reviving the "chaos" that had hindered class-action practice under Ex parte First National Bank of Jasper, 675 So.2d 348 (Ala. 1995) ("FNB of Jasper I"), and First National Bank of Jasper v. Crawford, 689 So.2d 43 (Ala.1997) ("FNB of Jasper II"). See S. Hill, And the Winner Is ... The First Filed Case: The Alabama Supreme Court Calls a Halt to the Races to the Courthouse for Class Action Certification, Birmingham Bar Ass'n Bull., Vol. 19, No. 2, Spring 1998, at 28 (discussing with approval the approach set forth in FNB of Jasper III). For those reasons, I dissent from the rationale on the abatement issue.
SHORES, J., concurs.
ALMON, Justice (concurring in Part IIA, dissenting from Part IIB, and concurring in the result in Part IIC).
I concur to set aside the class certifications for the reasons stated in Part IIA. I dissent from Part IIB of the main opinion to the extent that it sets forth an absolute rule on compulsory counterclaims. I would leave these question for flexible application by the trial courts in the first instance, subject to review under an abuse-of-discretion standard. As to Part IIC, I concur only in the result, because, as the cases cited in Justice Cook's special writing and other similar cases have established, the question of which of two competing class actions should proceed is not a question of abatement under § 6-5-440, Ala.Code 1975.
NOTES
[1] For example, the sum total of the analysis of the Rule 23(a)(4) "adequacy" criterion appearing in the trial court's order is as follows:

"ADEQUACY
"In determining adequacy, the emphasis is placed on first whether the representative's counsel is capable and second whether the representative has a conflict or antagonism with the class. Kirkpatrick v. J.C. Bradford, 827 F.2d 718 (11th Cir.1987)[, cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988)]. Both of these considerations weigh in favor of certification."
[2] Federal Rule 13(a), as addressed in Plant, 598 F.2d at 1360 n. 5, provided in pertinent part:

"Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
[3] The treatise states:

"[S]trong reasons support a determination that Rule 13 governing counterclaims is inapplicable in class action suits based on the language of Rule 13 and its underlying policies. Apart from Rule 23 and its derivatives, all the other rules of civil procedure, including Rule 13, were promulgated with reference to guiding the conduct of litigating parties. Rule 13 expressly is applicable only to opposing parties. A court may properly conclude that absent class members are not opposing or litigating adversaries for purposes of Rule 13, and therefore Rule 13 is inapplicable in a class context. Because compulsory counterclaims can only be potentially involved when Rule 13 applies, if absent class members are not opposing parties within the meaning of the rule, it follows that any counterclaims that may be permitted in a class action are not governed by Rule 13 and are purely discretionary with the court."
1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 4.34, pp. 4-146 to -147 (second emphasis added) (footnotes omitted).
[4] We also note that Rule 23(c)(2), Ala. R. Civ. P., provides for notice to class members; thus, that rule provides a process for notifying those class members against whom the defendant asserts counterclaims.
[5] Rule 82(c), Ala. R. Civ. P., reads as follows:

"Venue Where Claim or Parties Joined. Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22, and 24, as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties."
The Committee Comments to Rule 82(c) state:
"The correct principle seems to be that once venue is properly laid, other claims and parties may be joined as ancillary to the original action regardless of venue requirements."
[6] Rule 23(b), Ala. R. Civ. P., reads in pertinent part:

"Class Actions Maintainable. An action may be maintainable as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
". . . .
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
(Emphasis added.) Rule 23(c)(4), Ala. R. Civ. P., provides:
"When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."
[7] We note that because the Birmingham Water Works Board transacts business in St. Clair County, Ala.Code 1975, § 6-3-7, makes venue proper in that county. Ex parte Swift Loan & Fin. Co., 667 So.2d 706 (Ala.1995). Thus, Act No. 213, Ala. Acts 1919, creating the Bessemer Division of the Jefferson Circuit Court, does not deprive the St. Clair Circuit Court of jurisdiction over the direct customers of the Birmingham Water Works Board. See Ex parte Jackson, 516 So.2d 768, 769 (Ala.1986).