893 So.2d 314 (2004)
GENERAL MOTORS ACCEPTANCE CORPORATION et al.
v.
Donald MASSEY et al.
1030209.
Supreme Court of Alabama.
May 14, 2004.
*315 Warren B. Lightfoot and Sara Anne Ford of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellants.
G.Daniel Evans and K. Edward Sexton II of Evans & Sexton, P.C., Birmingham, for appellees.
WOODALL, Justice.
General Motors Acceptance Corporation ("General Motors"); Motors Insurance Corporation ("MIC"), a subsidiary of General Motors; and MIC Property and Casualty Corporation ("MICPAC"), a subsidiary of MIC (hereinafter collectively referred to as "GMAC"), appeal from an order refusing to decertify a class that had been certified on September 15, 1995, but amending the class-certification order, pursuant to Ala. R. Civ. P. 23(b)(3). We vacate the order and remand the cause with directions.
This action arises out of a class-action complaint filed on December 14, 1993  as amended on June 8, 1995  in which Donald Massey and Judy Jennings alleged that General Motors had improperly "force-placed" collateral protection insurance ("CPI") against their accounts with GMAC. Massey and Jennings each executed a retail installment contract for the purchase of an automobile to be financed by General Motors. Each contract provided for the placement by General Motors of CPI coverage in the event the buyer failed or refused to insure the financed vehicle. The contracts provided, in pertinent part:

*316 "Required Physical Damage Insurance. You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. At any time during the term of this contract, if you do not have physical damage insurance which covers both the interest of you and [General Motors] in the vehicle, then [General Motors] may buy it for you. If [General Motors] does not buy physical damage insurance which covers both interests in the vehicle, it may, if it decides, buy insurance which covers only [its] interest.
"[General Motors] is under no obligation to buy any insurance, but may do so if it desires. If [General Motors] buys either of these coverages, it will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a finance charge, at the highest lawful contract rate. You agree to pay the charge in equal installments along with the payments shown on the payment schedules.
"If the vehicle is lost or damaged, you agree that [General Motors] can use any insurance settlement either to repair the vehicle or to apply to your debt."
Massey and Jennings failed to maintain physical damage insurance on their vehicles, and General Motors purchased CPI for their vehicles. General Motors paid MIC $771 for single-interest coverage on Jennings's vehicle, and added that amount, plus $190 in "finance charges," to the balance General Motors claimed under Jennings's retail installment contract. Similarly, General Motors purchased CPI from MICPAC for Massey's vehicle.
The amount of insurance purchased in each case was based on the amount of the outstanding loan balance. MIC and MICPAC, however, were obligated to pay claims based on the lesser of (1) the cost of repair, (2) the actual cash value of the vehicle, or (3) the outstanding loan balance.
Massey paid no portion of his CPI premium. Subsequently, his vehicle was totally destroyed in an accident with a third party, and General Motors canceled the policy as of the accident date. At Massey's request, General Motors took possession of the vehicle, and MICPAC paid General Motors $5,946.16, based on Massey's outstanding account balance. General Motors applied the payment to Massey's account, leaving an alleged $635.70 deficiency, a portion of which was the unpaid CPI premium.
In their amended complaint, Massey and Jennings averred that GMAC "routinely overcharged [them] and [the putative] class members for [CPI]" in two ways. First, they alleged that the CPI was merely "phantom insurance coverage." In that connection, the complaint stated:
"[GMAC] accomplished this by purchasing insurance in a face amount which was equal to the total amount of the debt. For example, if a class member owed $18,000 on his or her debt, [GMAC] purchased [CPI] in the amount of $18,000, even if the class member's automobile was worth less than $18,000. The class member would not receive $18,000 of insurance protection, however, because the policy provided that the insurer would pay the lesser of (a) the balance due on the account, or (b) the value of the collateral, less any salvage value."
(Emphasis added.)
Second, Massey and Jennings averred that GMAC "charged them for additional insurance coverages which protected one or more of the defendants, but which provided no protection for the plaintiffs or class members." They describe this "additional coverage" as a "kickback" to General *317 Motors or MIC in the form of a "commission" or "administrative fee," which is never "credited to the account of the plaintiffs or class members." They sought damages under various theories, including (1) breach of contract, (2) wrongful repossession, (3) breach of fiduciary duty, and (4) violation of Ala.Code 1975, § 5-19-20 and certain "State Banking Regulations."
On March 21, 1994, General Motors filed a "conditional" class-wide counterclaim, averring, in pertinent part:
"1. Each potential member of the class of Plaintiffs that might be certified by this court has signed a Retail Installment Sales Contract and/or Promissory Note which has been assigned to [General Motors] on various dates, which Retail Installment Contract and/or Promissory Note obligates each potential class member to pay a principal sum of money to [General Motors], plus interest, each month during a certain period of time at a designated annual percentage rate. After any potential certification of this case as a class action, those potential class members will be in default and/or will have become in default of their individual payment obligations pursuant to the Retail Installment Sales Contract and/or Promissory Note that each one had signed and which contract and/or Promissory Note has been assigned to [General Motors].
"2. The potential class members owe to [General Motors] the various principal sums under their individual Retail Installment Sales Contracts and/or Promissory Notes which have been assigned to [General Motors], plus unpaid interest, plus attorney's fees.
"WHEREFORE, [General Motors] demands judgment against all of the potential class members against whom this counterclaim will be and is asserted for the principal sums owing by each of them to [General Motors], plus all accrued interest, plus attorney's fees and costs of this action."
Subsequently, General Motors also filed a counterclaim against Massey specifically, seeking recovery of the alleged deficiency of "$635.70, plus all accrued interest, plus attorney's fees and costs."
On September 15, 1995, the trial court certified the following class:
"All individuals who entered into credit agreements with [General Motors], or who entered into and who have had [CPI] force placed against their accounts with [General Motors].... The scope of the class is limited to those individuals who were residents of Alabama at the time [CPI] was force placed against their accounts with [General Motors] and who were charged for force-placed insurance at any time between the date six years before the filing [of] the complaint in this action and September 1, 1995."
The litigation "simmered" for the next several years, while it was removed to federal court and remanded to the state court, where multiple trial judges recused themselves. Meanwhile, the Legislature enacted Act No. 99-250, Ala. Acts 1999, codified at Ala.Code 1975, §§ 6-5-640 to -642. Section 6-5-642 provides a right of appeal from an order certifying a class. Section 6-5-641 contains a number of provisions concerning the procedures for class certification. Section 6-5-641(a) mandates compliance with §§ 6-5-641 and -642, as a prerequisite for class certification. Section 6-5-641(b) requires the trial court to conduct a scheduling conference
"[a]s soon as practicable after the commencement of an action in which claims or defenses are purported to be asserted on behalf of or against a class, ... but in no event prior to the time allowed by law for each party (including ... counterclaim... *318 defendants) to file an answer or other pleading responsive to the complaint [or] counterclaim."
(Emphasis added.) Section 6-5-641(e) provides, in pertinent part:
"When deciding whether a requested class is to be certified, the court shall determine, by employing a rigorous analysis, if the party or parties requesting class certification have proved its or their entitlement to class certification under Ala. R. Civ. P. 23.... In making this determination, the court shall analyze all factors required by Ala. R. Civ. P. 23 for certification of a class and shall not order certification unless all such factors shall have been established. In announcing its determination, the court shall place in the record of the action a written order addressing all such factors and specifying the evidence, or lack of evidence, on which the court has based its decision with regard to whether each such factor has been established."
(Emphasis added.)
On January 14, 2003, GMAC moved to decertify the class, arguing that since the date of certification, "class-action law in Alabama has undergone a metamorphosis," requiring a more "rigorous" and "demanding" analysis. GMAC argued that General Motors' counterclaims and defenses would overwhelm "any common points that may exist," rendering the case unsuitable for class-action disposition. More specifically, it argued that resolution of the case would involve predominantly individual inquiries as to whether the premium payments of the putative class members were made to General Motors voluntarily ("the voluntary-payment defense"). It also argued that the counterclaims against Massey and the putative class for unpaid amounts were compulsory counterclaims, and that they could be resolved only on a case-by-case basis.
On October 8, 2003, the trial court  without addressing the counterclaims or defenses  amended the September 15, 1995, certification order, stating:
"1. This case is certified as a class action as to the claims of breach of contract, violation of `Alabama Mini-Code,' violation of Alabama State Banking Regulations, wrongful repossession, and breach of a fiduciary duty and consisting of the following definition of the class:
"A. Those plaintiffs whose policies were based on single interest premiums with MIC, a wholly owned subsidiary of [General Motors].
"B. Those plaintiffs whose policies were based on limited dual interest premiums with MICPAC, a ... subsidiary of [MIC].
"There are potential subclasses under both of the primary classes as to plaintiffs whose vehicles were wrongfully repossessed as a result of the premiums of the aforementioned policies."
From that order, GMAC appealed.
"It is well settled that the party seeking certification of a Rule 23(b)(3) class must demonstrate the existence of all the criteria set forth in Rule 23(a), namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, plus the Rule 23(b)(3) requirements of (1) predominance and (2) superiority. See Reynolds Metals Co. v. Hill, 825 So.2d 100, 103 (Ala.2002). More specifically, putative Rule 23(b)(3) class representatives must demonstrate that `the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication *319 of the controversy.' Rule 23(b)(3)."
Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1116 (Ala.2003).
This Court must "review de novo the question whether the trial court applied the correct legal standard in reaching its decision [to certify the class]." Compass Bank v. Snow, 823 So.2d at 667, 671 (Ala.2001). On appeal, GMAC complains of the trial court's apparent failure to consider the counterclaims and defenses. GMAC's brief, at 50-51, 60. Regarding the voluntary-payment defense, GMAC states: "The only way for class members to survive this defense is to prove that, despite the presumption running against them, in their case, payments made to [General Motors] can be deemed in voluntary. But this entails an inquiry into the situation of the class member in question." GMAC's brief, at 56 (emphasis in original). As for the counterclaims, GMAC states:
"[General Motors] has a counterclaim against named plaintiff Donald Massey for money he still owes under his contract. [It] will have similar claims against a significant part of the class. The only way to learn which plaintiffs are subject to a counterclaim is, again, to review the file of every class member. Still, even holding aside this initial problem of identification, [General Motors'] counterclaims present individualized analyses that further render class treatment of this case impossible."
GMAC's brief, at 51 (citations to the record omitted). At the hearing on GMAC's motion to decertify the class, GMAC presented as a witness Kimberly Fiscus, a "customer relations analyst" for General Motors. She testified that only a "minority" of debtors actually paid the CPI premiums, and that, if the debtors "said they did not [want to] pay it, [General Motors] did not pursue the issue. If they just said they were going to pay the regular monthly payment, that's what [General Motors] collected."
GMAC contends that "[t]he question of [General Motors'] counterclaims[1] and defenses cannot be ignored by any cogent Rule 23[, Ala. R. Civ. P.,] analysis." GMAC's brief, at 51. We agree.
Section 6-5-641, as well as recent opinions of this Court, compel the conclusion that a class-certification order that does not consider compulsory counterclaims does not reflect a "rigorous analysis" of the Rule 23 factors. Section 6-5-641(b) expressly contemplates that a certification hearing will not be conducted before the time has expired for the filing of any counterclaims. Section 6-5-641(e) requires that, as part of its "rigorous analysis," the trial court must not only consider and analyze all the Rule 23 certification factors, but must also "place in the record... a written order addressing all such factors and specifying the evidence, or lack of evidence, on which the court... based its decision with regard to whether each such factor has been established." (Emphasis added.) Under this section, the trial court has no discretion to omit consideration  and discussion  of counterclaims and relevant defenses.[2]
This conclusion is exemplified by recent opinions of this Court, which have ordered the decertification of classes where the *320 action included claims that were subject to counterclaims, or which have vacated certification orders for failure to address defenses. See U-Haul Co. of Alabama v. Johnson, 893 So.2d 307 (Ala.2004); Compass Bank v. Snow, supra; Ex parte Water Works & Sewer Bd. of City of Birmingham, 738 So.2d 783 (Ala.1998); see also General Motors Acceptance Corp. v. City of Red Bay, 825 So.2d 746, 749 (Ala.2002) (vacating a "lengthy" certification order and remanding for further proceedings, where there were "several indicia of a lack of a rigorous analysis"); Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400 (Ala.2001) (vacating a certification order where the trial court failed to determine whether the insurance contract at the center of the dispute was ambiguous).
In Ex parte Water Works & Sewer Board of City of Birmingham, supra, this Court vacated, by a writ of mandamus, class-certification orders that denied the defendant "the right to assert [compulsory] counterclaims against [the] delinquent class members." 738 So.2d at 787.[3] The St. Clair Circuit Court had certified a class pursuant to Rule 23(b)(3) but had excluded the defendant's counterclaims, concluding that "the counterclaims would engender confusion and disruption in the administration of the class action." 738 So.2d at 786. This Court instructed the trial courts to "assess each of the provisions of Rule 13 [Ala. R. Civ. P., dealing with counterclaims] and Rule 23 in determining whether class certification is appropriate in each case." 738 So.2d at 796 (emphasis added). It stated that where "compulsory counterclaims make the class unmanageable,... the trial court should not certify the class." 738 So.2d at 795-96 (citing Heaven v. Trust Co. Bank, 118 F.3d 735 (11th Cir.1997); Marshall Durbin & Co. of Jasper, Inc. v. Jasper Utils. Bd., 437 So.2d 1014 (Ala.1983), overruled on other grounds, Ex parte Waterjet Sys., Inc., 758 So.2d 505 (Ala.1999)). In vacating the certification orders, this Court instructed the trial courts to "conduct a rigorous analysis, applying Rule 23 and, where appropriate, Rule 13 to the facts of the respective class actions before ordering the classes certified or not certified." 738 So.2d at 797.
In Compass Bank v. Snow, 823 So.2d at 678, we held that, in addition to other manageability problems, a breach-of-contract claim against Compass Bank and Compass Bancshares, Inc., by account holders did not satisfy the Rule 23(b)(3) "superiority" requirement, because class members were subject to potential counterclaim liability that threatened to "exceed[ ] any potential recovery." In U-Haul Co. of Alabama v. Johnson, 893 So.2d at 313, we held that the "trial court exceeded its discretion in failing to address the voluntary-payment doctrine in its class-certification order," vacated the order, and remanded the case with directions to "consider the effect on the issue of class certification of the ... defendants' assertion of the voluntary-payment defense."
Because the trial court failed to address the compulsory counterclaims, or the defenses, the October 8, 2003, certification order does not reflect the necessary "rigorous analysis." That order is, therefore, vacated, and cause remanded. The trial court is directed on remand to analyze and address those matters, as required by § 6-5-641(e).
ORDER VACATED; CAUSE REMANDED WITH DIRECTIONS.
*321 HOUSTON, SEE, and LYONS, JJ., concur.
JOHNSTONE, J., concurs specially.
JOHNSTONE, Justice (concurring specially).
I concur in the main opinion. I maintain the views I expressed in my special concurrence in U-Haul Co. of Alabama v. Johnson, 893 So.2d 307, 313 (Ala.2004).
NOTES
[1] Massey and Jennings do not challenge GMAC's characterization of the counterclaims as "compulsory."
[2] Because § 6-5-641(e) requires the trial court to place in the record a written order containing its findings and conclusions, we cannot assume, in the case of a class-certification order, that the trial court made those findings necessary to support its order.
[3] That case involved orders entered in actions filed in both St. Clair County and Jefferson County.