908 So.2d 246 (2004)
KAUFMANN & ASSOCIATES, INC.
v.
Terry G. DAVIS and Blue Dot Promotions, Inc.
2030206.
Court of Civil Appeals of Alabama.
May 14, 2004.
Rehearing and Opinion Dissenting from Overruling of Application for Rehearing July 30, 2004.
Certiorari Denied March 25, 2005.
*248 K. Donald Simms, Andrew P. Anderson, and Joseph E.B. Stewart of Austill, Lewis & Simms, P.C., Birmingham, for appellant.
Keith Jackson and Robert R. Riley, Jr., of Riley & Jackson, P.C., Birmingham, for appellees.
Alabama Supreme Court 1031697.
PITTMAN, Judge.
This appeal arises from bitterly contested litigation between a commissioned salesperson and his former employer stemming from the salesperson's launch of a competing company.
On April 10, 2001, Kaufmann & Associates, Inc. ("Kaufmann"), filed an action in the Jefferson Circuit Court, Birmingham Division, seeking a temporary restraining order ("TRO"), a preliminary injunction, and an "order of replevin" directing Terry G. Davis, who was at that time a Kaufmann employee, and Blue Dot Promotions, Inc. ("Blue Dot"), a corporation Davis had founded,[1] to return a portable laptop computer that Davis had used in the scope of his employment with Kaufmann. That action was assigned case number CV-01-2198. A TRO was issued and the computer was seized later that day. The trial court later held a hearing on Kaufmann's requests for injunctive relief and entered an order on the case action summary sheet stating that its TRO would be "continued in effect as a Preliminary Injunction."
In late May 2001, Davis and Blue Dot filed motions to dissolve the preliminary injunction, and Davis asserted a counterclaim against Kaufmann under § 8-24-1 et seq., Ala.Code 1975, seeking payment of commissions allegedly due Davis that had not been paid by Kaufmann. Davis and Blue Dot demanded a trial by jury as to "all issues subject to jury trial." Kaufmann responded to that counterclaim by adding, among others, claims against Davis and Blue Dot seeking damages on theories of intentional interference with business relations and conversion of purchase orders. Kaufmann later asserted that with respect to Davis's counterclaim, it was entitled to a setoff of over $16,000 in commissions that Kaufmann claimed Davis had been overpaid during his employment, and Kaufmann also moved for an award of damages based upon alleged violations by Davis and Blue Dot of the TRO and the preliminary injunction.
The case was ultimately bifurcated: a jury was empaneled to hear all the claims asserted and all the issues raised by the parties except Kaufmann's request for an award of damages stemming from the alleged violations by Davis and Blue Dot of the TRO and the preliminary injunction. At the conclusion of the jury trial, the jury was instructed on, among other things, Kaufmann's conversion and intentional-interference claims, Davis's unpaid-commission claims, and permissible inferences the jury could make based upon a finding that any party had spoliated evidence. The jury rendered a verdict in favor of Davis and Blue Dot on Kaufmann's damages *249 claims, and it found in favor of Davis on his counterclaim, awarding damages in the amount of $15,197.40 (i.e., $7,598.70 in compensatory damages and $7,598.70 as enhanced damages permitted under § 8-24-3, Ala.Code 1975). The Jefferson Circuit Court, Birmingham Division, entered a judgment on the jury's verdict on December 20, 2002, and it denied Kaufmann's motion for damages for claimed violations of the TRO and the preliminary injunction. Kaufmann appealed to the Alabama Supreme Court from the trial court's judgment in case number CV-01-2198; that court transferred the appeal to this court. We are today affirming the trial court's judgment, without an opinion. Kaufmann & Assocs. v. Davis (No. 2020507, May 14, 2004), ___ So.2d ___ (Ala.Civ.App.2004) (table) ("Kaufmann I").
While Kaufmann I was pending on appeal, Kaufmann filed a second action against Davis and Blue Dot in the Bessemer Division of the Jefferson Circuit Court. In its complaint in that action, Kaufmann alleged that before Davis had founded Blue Dot in March 2001, Davis had, by suppressing material facts, fraudulently induced Kaufmann to rescind a noncompetition agreement that had previously been in force between the parties; that Davis and Blue Dot had acted in contravention of the noncompetition agreement so as to warrant damages, an injunction, specific performance, and restitution; that Davis and Blue Dot had spoliated material evidence and prejudiced Kaufmann's case in case number CV-01-2198; and that Davis and Blue Dot should account for and disgorge excess commissions allegedly paid to them by Kaufmann. Davis and Blue Dot, citing the former litigation between the parties and relying upon portions of the court file in that case, moved for a judgment dismissing Kaufmann's second action on the basis of the doctrine of res judicata and collateral estoppel or, in the alternative, for an order transferring the cause to the Birmingham Division. The Bessemer Division transferred the cause to the Birmingham Division (where it was assigned case number CV-03-4712), and that court set a hearing to consider the aspects of the defendants' motion seeking a dismissal.
After the cause had been transferred, Kaufmann filed a response in opposition to the motion filed by Davis and Blue Dot; Kaufmann contended, among other things, that its claims were not barred by the doctrines of res judicata or collateral estoppel, that Davis and Blue Dot were judicially estopped from contending that Kaufmann's fraud claims could not proceed, and that jurisdiction and venue had been exclusively proper in the Bessemer Division. The Birmingham Division entered a judgment in case number CV-03-4712 stating that it had "engaged in exhaustive review" of the claims in the action and had compared them to the claims and issues presented in the first action; it concluded that Kaufmann's claims were barred by the doctrines of res judicata and collateral estoppel. That judgment prompted Kaufmann to again appeal. The Supreme Court transferred Kaufmann's appeal in the second action to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Although the parties dispute the applicable standard of review, we note that under Rule 12(b), Ala. R. Civ. P., where a party has moved for a judgment of dismissal for failure to state a claim and where materials other than the complaint have been submitted to and not expressly excluded by the trial court, the motion to dismiss is to be treated as one seeking a summary judgment pursuant to Rule 56, Ala. R. Civ. P. In this case, the trial court expressly considered the claims asserted in the first action in determining that the second action was due to be dismissed; by *250 doing so, that court considered materials that were not judicially noticeable by that court. See Mitchell v. Golden Poultry, Inc., 729 So.2d 873, 874 (Ala.Civ.App.1999) (stating that because the trial court "had disposed of [a] prior case and it had been appealed to this court before" a second case was filed, the trial court "could not have taken judicial notice of the prior case"). We therefore treat the judgment under review as a summary judgment, as to which we note the following pertinent principles of review:
"Under Rule 56(c)(3), Ala. R. Civ. P., a trial court is authorized to enter a summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Because the pertinent facts in [this case] are undisputed, we review the trial court's application of law to those facts to determine whether the defendant[s were] entitled to a judgment as a matter of law. See Carpenter v. Davis, 688 So.2d 256, 258 (Ala.1997). We review the trial court's judgment under a de novo standard. See Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993)."
Menendez v. COLSA, Inc., 852 So.2d 768, 770 (Ala.Civ.App.2002). We thus reject the contention of Davis and Blue Dot that a presumption of correctness applies to the trial court's judgment.
Kaufmann contends that the Birmingham Division (which, under § 6-3-7(d), Ala.Code 1975, is treated as a separate judicial district from the Bessemer Division for venue purposes) lacked jurisdiction and was an improper venue with respect to its claims in this action; thus, it claims, the Bessemer Division should not have transferred its action to the Birmingham Division.
However, with respect to jurisdiction, Kaufmann's tort claims against Davis and Blue Dot could have been brought in any Alabama circuit court in which personal jurisdiction over the defendants could be obtained. See Ex parte Southern Ry. Co., 556 So.2d 1082, 1087-88 (Ala.1989). With respect to venue, because Kaufmann's principal place of business is located in the Bessemer Division and Davis's residence and Blue Dot's principal place of business are located within the Birmingham Division, both divisions were proper forums for the adjudication of Kaufmann's claims. Compare Ala.Code 1975, §§ 6-3-2(a)(3) and 6-3-7(a)(1) with §§ 6-3-2(a)(2) and 6-3-7(a)(2) (providing that while tort claims against individuals and corporations may be brought in county where acts or omissions allegedly occurred, civil actions against corporations may also be brought in the county of the corporation's principal office in this state, and contract actions against individuals must be brought in individual's county of residence). Because the Birmingham Division was a proper venue and had already hosted one trial involving competing claims among the parties, we cannot conclude that the Bessemer Division erred in transferring the cause. See § 6-3-21.1, Ala.Code 1975 (statute allowing discretionary transfer of actions from one proper forum to another "in the interest of justice").
We now turn to the substantive issues raised by the parties. Kaufmann contends that the trial court should not have dismissed its spoliation-of-evidence claim against Blue Dot and Davis. However, Kaufmann asserted that issue during the earlier litigation involving the parties, and the jury in that case was given a spoliation instruction based upon Kaufmann's claim that Davis had destroyed evidence. Such an instruction is a remedy available when a party to pending litigation is alleged to have spoliated evidence. See Smith v. Atkinson, 771 So.2d 429, 438 *251 (Ala.2000) (holding that spoliation may be a basis for a cause of action where a third party has negligently destroyed material evidence, but stating that "[j]ury charges that presume missing evidence weighs against the spoliator[] and discovery sanctions. . . are available when spoliation is charged against an opposing party"). Principally because such a remedy exists, the Alabama Supreme Court "has refused to recognize . . . a cause of action [for an independent tort of evidence spoliation] when the spoliator was a defendant in an actionthat included a tort claim other than the alleged spoliationfiled by a plaintiff whose evidence was lost or destroyed." 771 So.2d at 432 (citing Christian v. Kenneth Chandler Constr. Co., 658 So.2d 408, 413 (Ala.1995)). Kaufmann's claim in the second action for damages allegedly arising out of Davis's and Blue Dot's spoliation of evidence thus fails as a matter of law.
However, Kaufmann's argument on appeal that the doctrines of res judicata and collateral estoppel do not bar its remaining claims against Davis and Blue Dot is, in large part, meritorious. Pursuant to Butler v. Olshan, 280 Ala. 181, 191 So.2d 7 (1966), and Slepian v. Slepian, 355 So.2d 714 (Ala.Civ.App.1977), we have taken judicial notice of the appellate record certified in the appeal from the first action, Kaufmann I. A review of that record reveals that in response to Kaufmann's request for a TRO and a preliminary injunction directing Davis and Blue Dot to return the laptop computer and barring them from damaging, deleting, using, or copying information from that computer, Davis asserted a counterclaim, pursuant to Ala.Code 1975, § 8-24-1 et seq., in which he alleged that Kaufmann had not paid Davis commissions it owed Davis for his services in securing orders for Kaufmann during his employment with Kaufmann. Davis could properly assert such a counterclaim pursuant to Rule 13(b), Ala. R. Civ. P., which permits, but does not require, the pleading of "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."
After Davis had asserted his permissive counterclaim against Kaufmann, Kaufmann, in turn, asserted certain permissive counterclaims against Davis and Blue Dot pursuant to Rule 13(b), Ala. R. Civ. P. Among those were a claim of intentional interference with business relations; a claim of conversion of a purchase order; a claim of conspiracy to obtain Kaufmann's customer orders; a claim of negligent or wanton hiring, training, and supervision; and a claim for treble damages and attorney fees. The factual background cited in support of Kaufmann's permissive counterclaims referred to events allegedly taking place beginning on March 27, 2001, and centered around Davis's and Blue Dot's alleged use of Kaufmann's equipment, files, and other assets to make sales on and after that date to customers of Kaufmann. Kaufmann later asserted that the trial court should award it damages based upon alleged violations by Davis and Blue Dot of the trial court's TRO and preliminary injunction, i.e., based upon conduct that allegedly occurred after the first action was filed.
In addition to those claims, Kaufmann asserted in filings in the first action that it was entitled to a setoff of over $16,000 in commissions that Kaufmann claimed Davis had been overpaid during his employment. As we explain below, to the extent that Kaufmann claimed that Davis had been overpaid commissions, Kaufmann's claim to a setoff was compulsory under Rule 13(a), Ala. R. Civ. P., which generally mandates assertion of "any claim which . . . the pleader has against any opposing party[] if it arises out of the transaction or occurrence *252 that is the subject matter of the opposing party's claim."
During the jury trial in the first action, Kaufmann expressly waived its claims of conspiracy; negligent or wanton hiring, training, and supervision; and treble damages and attorney fees. In addition, Kaufmann's attorney stated and Kaufmann's principal (Andy Kaufmann) testified in open court that they were not claiming overpaid commissions, and Kaufmann's setoff claim was not submitted to the jury; the jury's verdict thus addressed only Kaufmann's conversion and intentional-interference claims and Davis's unpaid-commission claims, and the trial court's judgment on that verdict adjudicated only those claims and Kaufmann's claim that Davis and Blue Dot had violated the TRO and preliminary injunction.
It is necessary to set forth the pertinent procedural history of the first action in detail because, under Alabama law, the doctrine of res judicata will bar a court from considering a claim only when the following four elements are present: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala.1998). Although we agree with Davis and Blue Dot that the Birmingham Division, in light of Rule 13, Ala. R. Civ. P., had jurisdiction to adjudicate all of the claims that they asserted and that Kaufmann asserted in the first action, and while the judgment in the first action was a final judgment on the merits involving the same parties, we cannot agree that all of Kaufmann's claims in the second action present the "same cause[s] of action" as were presented in the first action.
The touchstone of whether a particular claim presents the same cause of action that was presented and litigated to a final judgment in a previous civil action is "whether the claims in both actions arise out of, and are subject to proof by, the same evidence." Vinson, 723 So.2d at 637; accord, Selma Foundry & Supply Co. v. Peoples Bank & Trust Co., 598 So.2d 844, 848 (Ala.1992) (noting that "Alabama does not use the . . . `same transaction' test" espoused in Restatement (Second) of Judgments § 24 (1982)). In Vinson, the Alabama Supreme Court stated the pertinent principle of law:
"If a claim, which arises out of a single wrongful act or dispute, is brought to a final conclusion on the merits, then all other claims arising out of that same wrongful act or dispute are barred, even if those claims are based on different legal theories or seek a different form of damages, unless the evidence necessary to establish the elements of the alternative theories varies materially from the evidence necessary for a recovery in the first action."
723 So.2d at 638 (emphasis added).
In the first action involving the parties, all of Kaufmann's claims that were tried to a conclusion in the jury trial flowed from the alleged use by Davis and Blue Dot of Kaufmann's assets and information to solicit and fill orders beginning on March 27, 2001. Although counsel for Kaufmann attempted to adduce evidence during the trial in the first action that Kaufmann had been defrauded by Davis into rescinding the noncompetition agreement, counsel for Davis and Blue Dot pointed out that Kaufmann had not brought a fraud claim based upon the rescission of that agreement, and no such claim was presented to the jury in that action. Kaufmann's claims asserting that Davis fraudulently suppressed information in early March 2001 that he had a duty to *253 disclose to Kaufmann and that the noncompetition agreement was rescinded based upon that alleged fraud call for wholly different proof than Kaufmann's permissive counterclaims in the first action stemming from Blue Dot's and Davis's conduct after Davis had formed and started Blue Dot. Stated another way, Kaufmann's claims challenging the validity of the rescission of the noncompetition agreement and seeking enforcement of that agreement in spite of Kaufmann's rescission thereof do not, in the words of Vinson, "aris[e] out of th[e] same wrongful act or dispute." 723 So.2d at 638. Similarly, the doctrine of collateral estoppel does not bar Kaufmann's claims stemming from the noncompetition agreement because that agreement was not directly in issue in the first action and because resolution of the existence and validity of that agreement was not necessary to the judgment in the first action. See Smith v. Union Bank & Trust Co., 653 So.2d 933, 934 (Ala.1995) (listing elements of collateral estoppel). The trial court's dismissal of Kaufmann's second action was thus erroneous as a matter of law with respect to those claims.[2]
However, we agree with Davis and Blue Dot that Kaufmann's claims in the second action concerning its alleged overpayment of commissions to Davis were barred. A comparison of the pleadings in the two actions involving the parties indicates that Davis asserted a permissive counterclaim against Kaufmann in the first action for payment of unpaid commissions. While Kaufmann initially contended that it was entitled to a setoff as to Davis's unpaid-commissions claim for all of its over-payments to Davis, that contention was later waived.[3] Kaufmann then sought in the second action to compel Davis and Blue Dot to repay sales commissions that Kaufmann says it overpaid to Davis.
Under Rule 13(a), Ala. R. Civ. P., a compulsory counterclaim "shall" be asserted "against any opposing party." "`A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim.'" Ex parte Water Works & Sewer Bd. of Birmingham, 738 So.2d 783, 789 (Ala.1998) (emphasis added) (quoting Rule 13, Ala. R. Civ. P., Committee Comments). Under that principle, "`a counterclaim [i]s compulsory if (1) its trial in the original action would avoid substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts.'" Ex parte Water Works & Sewer Bd., 738 So.2d at 789 (quoting Brooks v. Peoples Nat'l Bank, 414 So.2d 917, 919 (Ala.1982)). "`[C]laims arise from the same core of operative facts if (1) the facts taken as a whole serve as the basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant.'" 738 So.2d at 789 (quoting Brooks, 414 So.2d at 919).
In this case, Kaufmann's claim that it was entitled to recoup from Davis commissions it allegedly overpaid to Davis arises from the same employer-employee relationship that underlies Davis's claim that Kaufmann underpaid his commissions. Indeed, the exhibits attached in support of *254 Kaufmann's complaint in the second action refer to the same orders as to which Davis claimed nonpayment of commissions in the first action (among others). Kaufmann's overpayment claim thus bears a logical relationship to Davis's counterclaim in the first action, and Kaufmann's waiver of its setoff claim in the first action indicates that it failed to prosecute that claim to a judgment. Kaufmann's failure to do so bars its claims in the second action arising from its alleged overpayments of commissions to Davis. See Alabama Ins. Guar. Ass'n v. Southern Alloy Corp., 782 So.2d 203, 206 (Ala.2000) (noting that a party's failure to assert a compulsory counterclaim bars its assertion of that claim in another action; citing Brooks, 414 So.2d at 920).
Based upon the foregoing facts and authorities, the trial court's judgment in favor of Davis and Blue Dot is reversed as to Kaufmann's claims arising from Davis's allegedly having fraudulently obtained Kaufmann's consent to rescind the parties' non-competition agreement and Kaufmann's claims seeking to enforce that agreement. In all other respects, the trial court's judgment is affirmed. The cause is remanded for further proceedings consistent with this opinion. The motion filed by Davis and Blue Dot seeking an award pursuant to Rule 38, Ala. R.App. P., is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., concurs in the result, without writing.

On Application for Rehearing
PITTMAN, Judge.
APPLICATION OVERRULED.
YATES, P.J., and THOMPSON, J., concur.
MURDOCK, J., dissents, with writing, which CRAWLEY, J., joins.
MURDOCK, Judge, dissenting.
I would grant the application for rehearing and would affirm the trial court's judgment insofar as it dismisses Kaufmann's second action on the ground of res judicata. The basis for my opinion in this regard may be drawn from the same passage from our Supreme Court's opinion in Equity Resources Management, Inc. v. Vinson, 723 So.2d 634 (Ala.1998), that was quoted in the main opinion on original deliverance, with slightly different emphasis:
"If a claim, which arises out of a single wrongful act or dispute, is brought to a final conclusion on the merits, then all other claims arising out of that same wrongful act or dispute are barred, even if those claims are based on different legal theories or seek a different form of damages, unless the evidence necessary to establish the elements of the alternative theories varies materially from the evidence necessary for a recovery in the first action."
Equity Res. Mgmt., Inc., 723 So.2d at 638 (emphasis added). Put differently, "`[r]es judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts.'" Old Republic Ins. Co. v. Lanier, 790 So.2d 922, 928 (Ala.2000) (quoting Wesch v. Folsom, 6 F.3d 1465, 1471 (11th Cir.1993)) (emphasis omitted).
The "dispute" and the common "nucleus of operative facts"the "cause" for both of Kaufmann's "actions," if you willis the conduct of Terry Davis and Blue Dot following the termination of Davis's employment relationship with Kaufmann. Kaufmann's claim that Davis's postemployment *255 conduct in competing with Kaufmann's company was wrongful ex contractu, based upon the noncompetition agreement (which Kaufmann simply alleged remained enforceable because its purported rescission was induced by fraud), is a claim that could have been brought in Kaufmann's first action, along with Kaufmann's claim that Davis's postemployment conduct in competing with Kaufmann was wrongful ex delicto. See generally Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507, 517 (Ala.2002) (quoting Stephenson v. Bird, 168 Ala. 363, 366, 53 So. 92, 93 (1910)) (in order to be barred by the doctrine of res judicata, the alternative legal theory must be one "`that could have been litigated in the former cause or proceeding'").
I believe the main opinion on original deliverance (1) erred in concluding that Kaufmann's claims in his second action called for "wholly different proof" than the claims brought in his first action and (2) wrongly minimizes the extent to which the law allows there to be some difference in the evidentiary showings required by two different claims without those claims being considered to arise from different causes of action. The result reached by the main opinion on original deliverance wrongfully allows Kaufmann to split his cause of action between two different lawsuits. I would grant the application for rehearing to revisit this issue; therefore, I respectfully dissent.
CRAWLEY, J., concurs.
NOTES
[1] Although Kaufmann's principal place of business is located within the geographical boundaries of the Bessemer Division of the Jefferson Circuit Court, Davis's residence and Blue Dot's principal place of business are located in the Birmingham Division.
[2] It is unnecessary to address whether Davis and Blue Dot, because of their actions in the first trial, are judicially estopped from contending that Kaufmann cannot assert its fraud claim in the second action.
[3] In Kaufmann I, we affirmed the denial of Kaufmann's setoff claim. See Givens v. General Motors Acceptance Corp., 56 Ala.App. 561, 564, 324 So.2d 277, 279 (Civ.1975) (waiver of a right may be found where one's course of conduct indicates waiver or is inconsistent with any other intention).